IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| RORY DARNELL TAYLOR, § § Petitioner, § § v. § § LORIE DAVIS, Director, § Texas Department of Criminal Justice, § Correctional Institutions Division, § § Respondent. § | 2:17-CV-147-D |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## TO DENY PETITION FOR A WRIT OF HABEAS CORPUS

Petitioner has filed with this Court a Petition for a Writ of Habeas Corpus by a Person in State Custody challenging a prison disciplinary proceeding that took place at the Neal Unit in Potter County, Texas. Petitioner is currently incarcerated at the Neal Unit pursuant to two convictions, one for the offense of possession of a controlled substance with intent to deliver and the resultant 40-year sentence and the second for evading arrest/detention, enhanced, and the resultant 20-year sentence. Both convictions are out of the 2nd Criminal District Court of Dallas County, Texas. *See State v. Taylor*, Nos. F-1251511-I and F-1251510-I. [ECF 3 AT 2; 10 at 3; 10-1 at 2]. The undersigned United States Magistrate Judge is of the opinion petitioner's application for federal habeas corpus relief should be DENIED.

I.
DISCIPLINARY CHARGE AND PROCEEDINGS

On March 13, 2017, in disciplinary case number 20170204696, petitioner was charged

with the offense of assaulting an officer without a weapon that results in a non-serious or no injury, a Level 1, Code 3.3 violation of the TDCJ-CID *Disciplinary Rules and Procedures for Offenders.* [ECF 12-2 at 5]. Specifically, it was alleged that on March 11, 2017, petitioner, "attempted to assault officer France by attempting to throw cereal at [his] chest." *Id.* Upon his notification on March 13, 2017, petitioner was notified of his rights to call and question witnesses (including the charging officer), present documentary evidence, and be represented by counsel substitute. *Id.* at 6. Petitioner indicated he wished to attend the disciplinary hearing, and petitioner requested counsel substitute. *Id.* at 3, 6.

A Disciplinary Hearing Officer (DHO) conducted petitioner's disciplinary hearing on March 14, 2017. *Id.* at 3-4. The DHO found petitioner guilty of attempted assault based on two officers' report, as well as testimony from the charging officer and petitioner, and assessed punishment that included the forfeiture of sixty (60) days previously accrued good time credit.[1] *Id*. at 3.

Petitioner filed a Step 1 Grievance arguing:

1. TDCJ investigative guidelines were not followed; and

2. The DHO denied him the right to call and question a witness.

[ECF 12-1 at 3-4].

On March 25, 2017, relief was denied at Step 1 with the following response:

> Major Disciplinary Report #20170204696 and all related investigative documentation has been reviewed. The disciplinary charge was appropriate for the offense and the guilty verdict was supported by the preponderance of the evidence.

---

[1] Other punishment with which petitioner was assessed constituted changes in the conditions of petitioner's confinement and does not implicate the Due Process Clause of the United States Constitution. *See Sandin v. Conner*, 515 U.S. 472, 478 (1995); *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997).

> All due process requirements were satisfied and the punishment assessed by the Disciplinary Hearing Officer was within Agency guidelines. Furthermore, you were informed during your hearing on disciplinary tape #55-249096 that Lieutenant Padilla's statement would not be beneficial to you. Also the questions that were denied during your hearing was (sic) also explained to you why they were irrelevant. No further action is warranted in this matter.

*Id.* at 4. Petitioner then filed a Step 2 Grievance re-urging these arguments; however, on April 12, 2017 relief was denied with findings that, "The hearing records support the guilty finding. The punishment was within established guidelines and no due process errors [were] identified. Your witness was denied within guidelines. No further action is warranted." *Id*. at 6.

Having unsuccessfully challenged the case administratively, petitioner then filed the instant habeas petition challenging the disciplinary proceeding decision.

## II.
## PETITIONER'S ALLEGATIONS

Petitioner contends his federal constitutional rights were violated as a result of the disciplinary charge and finding of guilt on the following grounds:

1.  He was denied due process because:
    a. he was denied the right to call and question witnesses;
    b. he was denied the right to a fair and impartial DHO; and
    c. a preliminary investigation was not conducted; and

2.  There was no evidence to support the guilty finding.

## III.
## EXHAUSTION AND PROCEDURAL DEFAULT

Petitioner's federal habeas application is subject to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). No relief may be granted unless petitioner has first exhausted the remedies available in the state courts, or an exception to exhaustion exists.

However, petitioner's habeas application may be denied on the merits notwithstanding any failure to exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(2). This AEDPA deference scheme also applies to a habeas challenge to the determination resulting from a prison disciplinary procedure for which appeal is available through the grievance process. *Baxter v. Estelle*, 614 F.2d 1030, 1031-32 (5th Cir. 1980). Such an appeal through the grievance process has been construed to constitute "the right under the law of the State to raise, by [an] available procedure, the question presented." 28 U.S.C. § 2254(c); *see also Lerma v. Estelle*, 585 F.2d 1297, 1299 (5th Cir. 1978).[2] Consequently, an inmate challenging a prison disciplinary proceeding on constitutional grounds must exhaust his administrative remedies by following all internal dispute resolution procedures before seeking habeas corpus relief in federal court. To adequately exhaust state remedies, a claim for habeas relief must include not only a reference to a specific federal constitutional guarantee but must also demonstrate the petitioner is entitled to relief; a general appeal to a constitutional guarantee as broad as due process is inadequate to present the "substance" of the claims. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996). Nor is a federal claim adequately presented to the state by presenting somewhat similar claims. *Cf. Wilder v. Cockrell*, 274 F.3d 255, 259-60 (5th Cir. 2001).

Although petitioner challenged this disciplinary case through the prison grievance process, petitioner did not challenge the case on the ground that the evidence was insufficient to support the guilty finding (Ground 2). As a result, the merits of this claim were never administratively reviewed and petitioner's administrative remedies were not exhausted. Any

---

[2]Petitioner is not required to present habeas claims challenging prison disciplinary cases to the Texas Court of Criminal Appeals because that court has stated it will not entertain challenges to prison disciplinary proceedings or the denial of good conduct time credit under the Prison Management Act.   *Ex parte Palomo,* 759 S.W.2d 671 (Tex. Crim. App. 1988).

attempt to now exhaust these claims through the prison grievance system would be untimely. The Court, however, instead of dismissing this claim as is within its authority to do, will address this claim on the merits. *See infra*, V.B.

## IV.
## STANDARD OF REVIEW

In order to prevail, petitioner must show his due process rights were violated during the disciplinary process. The United States Supreme Court has set out the due process to which a prisoner is entitled during a disciplinary proceeding. In *Wolff v. McDonnell*, , the Court held that while disciplinary proceedings are not part of the criminal prosecution process and, therefore, the full panoply of rights does not apply, there are certain minimal due process provisions that must be satisfied. 418 U.S. 539 (1974). Those are:

(1) advance written notice of the charges;

(2) an opportunity to call witnesses and/or present documentary evidence when such presentation is not unduly hazardous to institutional safety or correctional goals; and

(3) a written statement by the fact finder of the evidence relied upon and the reasons for the disciplinary action.

*Id*. at 563-566. It is the law of the Fifth Circuit that the findings of the prison disciplinary hearing shall not be disturbed unless they are arbitrary and capricious. *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995).

In the instant case, petitioner was notified of the charge against him on March 13, 2017 at 1:23 p.m., over twenty-four hours prior to the March 14, 2017 hearing held at 4:15 p.m. [ECF 12-2 at 3]. The DHO provided a written explanation of the evidence relied on and the reasons for the disciplinary action taken. *Id*. Petitioner was given the opportunity to present evidence and

call witnesses, as discussed *infra*, within the scope of the hearing and as required by *Wolff.* The *Wolff* requirements have been met in this case.

V.
MERITS

A.
Due Process Violations

By his first claim petitioner asserts he was denied the right to call and question witnesses specifically, the right to call Lieutenant Amanda Padilla. [ECF 3 at 6]. Petitioner states that the officer's testimony could "possibly [have] showed contradiction to what the Charging Officer stated in his testimony at the hearing, since the lieutenant was standing next to the officer, when the alleged incident happened." *Id.*

The right to call witnesses at a prison disciplinary hearing is not absolute. Prison officials may deny a request when the projected testimony is irrelevant, unnecessary, or creates a hazard to institutional safety or correctional goals. In *Ponte v. Real*, the Supreme Court remarked that the discretion of prison officials was so broad that "it may be that a constitutional challenge to a disciplinary hearing [based upon an inmate's right to call witnesses] . . . will rarely, if ever, be successful." 471 U.S. 491, 499 (1985).

As articulated by respondent, at the disciplinary hearing the DHO asked petitioner's counsel substitute (CS) to present petitioner's documentary evidence and have witnesses testify but the CS stated he had none. When directly asked by the DHO, petitioner responded he would like to call Lt. Padilla, after he heard the testimony of the charging officer, because the lieutenant was standing there when the incident occurred. The DHO responded that she already had a

statement from Lt. Padilla; she read the statement into the record and then explored whether to allow the witness or not. As set out by respondent:

> Following Taylor's questioning of Officer France, the DHO noted, "there's some questions for Lt. Padilla. Are they already answered in her IOC?" When Taylor asked whether he could still call her as a witness, the DHO replied:
>
> It depends. You've got the right to question her. I'm just trying to figure out if there are different questions than what's already been answered, 'cause if they're already answered, we don't have to call her, but if they're different questions from what's already been answered, you do have that right to ask them.

[ECF 10 at 16]. Respondent has referred to the exchange that followed between petitioner, his CS and the DHO:

> CS Perez: 'Cause like your first question, you asked—I see, that's why we were going to call—it was explained to you why ICS was not called.
>
> Taylor: Yes, ma'am.
>
> CS Perez: Question number two is why weren't you placed in hand restraints. He [France] explained in one of his questions that we asked why you weren't immediately hand-restrained and taken to PHD. Number three. Really it's irrelevant because Padilla can't explain why you threw the cereal box. She can't answer that question. She can't be responsible for your actions. And for the other question for France was already answered as well. And then question number two again for Padilla was about the cereal, and it was already answered in both his statement and Padilla's statement.
>
> DHO: So do you have additional questions for Lt. Padilla on top of that?
>
> Taylor: No, ma'am.
>
> DHO: Let me think. I'm going to deny Lt. Padilla just due to the fact that any additional questioning is irrelevant to her.

*Id*.

Based upon this exchange, it is clear the DHO was well within her discretion to refuse to call Lt. Padilla in person. Petitioner himself admits that there is only a "possibility" that this officer

could add to the account of events. In the statement submitted by Lt. Padilla and read into the hearing transcript, the officer states,

> While monitoring G4 offenders, I witnessed offender Taylor with his pant legs rolled up and his shoe laces untied. I gave several orders to the offender to fix his pants and to tie his shoe. I then witnessed some cereal in the offenders (sic) jacket pocket. I ordered the offender to go throw the cereal in the trash. Offender Taylor threw the cereal up in the air directly at Officer France's chest. Officer France moved out of the way and [the cereal] did not hit the officer.

[ECF 12-2 at 9]. This case does not present one of those rare instances where the denial of witnesses, even if such was erroneous, justifies relief to petitioner. This claim as to witness testimony is without merit.

Petitioner next argues his right to due process under the United States Constitution was violated because he was denied the right to have a fair and impartial decision maker at the hearing. Specifically, petitioner contends the DHO, in denying his request to call Lt. Padilla, "based her decision on a preconceived and subjective belief that since the Charging Officer had already answered the same questions, that [Padilla] would answer the question[s] with the same answers." [ECF 3 at 6, 11]. Petitioner's claim should be denied because any claim that the hearing officer was not an impartial decision maker is conclusory. Petitioner offers absolutely nothing to demonstrate the officer was not fair and neutral. Petitioner has presented nothing to substantiate or support an allegation that the officer had undue bias or preconceived opinions. Conclusory allegations do not raise a constitutional issue for habeas review and should be summarily dismissed. *See Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982); *see also Blackledge v. Allison*, 431 U.S. 63, 74 (1977). This particular claim is without merit and should be denied as well.

Finally, petitioner argues his due process rights were violated because an officer with a rank of sergeant or higher did not conduct a preliminary investigation of the incident. *Id.* at 7. This claim is not only not cognizable on federal habeas review, but it is also without merit and unsupported by the record. *Wolff* does not mandate a preliminary investigation be conducted in disciplinary cases, and it does not require that a sergeant must conduct an investigation. *See Wolff*, 418 U.S. at 563-67. Additionally, even if petitioner's claim were cognizable, the record shows that once the charging officer completed the offense report on March 11, 2017 [ECF 12-2 at 5], a TDCJ Preliminary Investigation Report was completed the same date by Lt. Danner that included Lt. Padilla's witness statement. *Id*. at 8.

Petitioner's due process claim is essentially that TDCJ officials did not follow TDCJ policies that require a preliminary investigation. However, such claim is not cognizable on federal habeas review. TDCJ's violation of its own internal policies and procedures does not raise constitutional issues necessary to assert a cognizable ground on federal habeas corpus review.   *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986); *Manning v. Blackburn*, 786 F.2d 710, 711 (5th Cir. 1986). Petitioner's claim I this regard should be denied.

B.
Insufficient Evidence

By his final claim, petitioner argues the evidence was insufficient to support a guilty finding. [ECF 3 at 7]. Specifically, petitioner argues, "There wasn't any evidence to substantiate guilt, whereas normally there is for this type of offense, such as an ICS being called, Offender being sprayed with chemical agents, or Offender being put in hand restraints, immediately being

taken to PHD (Prehearing Detention)." *Id.* at 7, 12.

Federal habeas review of the sufficiency of the evidence to support a prison disciplinary ruling is extremely limited. Disciplinary determinations "will not be disturbed unless they are arbitrary and capricious." *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995). Due process requires only that there be "some evidence" in the record to support a prison disciplinary decision, and prison disciplinary decisions are overturned only where no evidence in the record supports the decision. *Broussard v. Johnson*, 253 F.3d 874, 876-77 (5th Cir. 2001). Consequently, this Court does not conduct a *de novo* review of the disciplinary proceedings, rather, this court's role on review is only to "examine if the guilty finding has the 'support of some facts' or 'any evidence at all.'" *Hudson v. Johnson*, 242 F.3d 534, 537 (5th Cir. 2001).

As discussed *supra*, the DHO read Lt. Padilla's witness statement into the disciplinary hearing record. In the statement, the witness testified petitioner "threw the cereal up in the air directly at Officer France's chest. Officer France moved out of the way and [the cereal] did not hit the officer." [ECF 12-2 at 9]. At the hearing, petitioner questioned Officer France about why he was not placed in hand restraints and why no ICS was called. [ECF 13, Disciplinary Hearing CD (DHCD)]. Officer France responded that it was due to a staff shortage and to prevent "further issues with other offenders." *Id.* The DHO interjected that "it's not necessary that they called ICS or that you get restrained at that point in time …so that really doesn't negate any of the charges anyway." *Id.* Officer France stated in the Offense Report, "[Lt. Padilla] ordered him to throw it in the trash at this time [petitioner] threw it towards my chest, almost hitting me with the cereal. Be advised the cereal would have hit me but I stepped out of the way." [ECF 12-2 at 5]. Further, Officer France testified at the disciplinary hearing,

> Lieutenant Padilla observed that [Taylor's] pant legs were rolled up, that his shoes were untied. She gave him multiple orders to address those issues, and then she observed that he had a box of cereal that he took from the inmate dining hall in his pocket, at which point he pulled it out and she gave him an order to go place it in the trash can on the outside. And at that point he tossed it over in my direction— I was standing by the mailboxes—and I had to move back toward the chow hall doors. And it hit the trash can.

[ECF 13, DHCD]. All of this constitutes "some evidence" sufficient to support the guilty decision. This claim should be denied.

## VI.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States Senior District Judge that the Petition for a Writ of Habeas Corpus by a Person in State Custody filed by petitioner RORY DARNELL TAYLOR be DENIED.

## VII.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED August 17, 2018.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is

fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).